IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-MJ-02070-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY J. HORTON, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's appeal (DE 31, 34) of the court's judgment entered July 26, 2017, following conviction and sentencing for driving while impaired, failing to remain at the scene of an accident, reckless driving, and resisting, delaying, or obstructing a public officer by United States Magistrate Judge Robert T. Numbers, II (the "magistrate judge"). In this posture, the issues raised have been fully briefed and are ripe for ruling. For the following reasons, the judgment is affirmed.

**BACKGROUND**

This appeal presents issues whether defendant's constitutional rights were violated based on the way officers conducted a criminal investigation. Defendant was found at trial to have fled the scene of a vehicular accident, and upon tracking defendant down, the officers noticed that he had the smell of alcohol on his breath.

A.   Procedural History

On January 24, 2017, the government filed a four-count criminal information against defendant, charging defendant with 1) operating a motor vehicle in December 2016 within the special maritime and territorial jurisdiction of the United States while impaired, in violation of 18

U.S.C. § 13, assimilating N.C. Gen. Stat. § 20-138.1 (count one); 2) failing to remain with the vehicle at the scene of an accident, knowing or having reason to know the vehicle he was operating was involved in an accident, until a law enforcement officer completed the investigation of the accident, in violation of 18 U.S.C. § 13, assimilating N.C. Gen. Stat. 20-166(c) (count two); 3) driving upon a street, highway, or public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, in violation of 18 U.S.C. § 13, assimilating N.C. Gen. Stat. § 20-140(b) (count three); and 4) willfully and lawfully resisting, delaying or obstructing a public officer in discharging or attempting to discharge a duty of his office, in violation of 18 U.S.C. § 13, assimilating N.C. Gen. Stat. § 14-223 (count four).

On May 3, 2017, defendant, represented by counsel, consented to proceed before a magistrate judge and pleaded not guilty to all counts. After obtaining a continuance for his trial, defendant filed his pre-trial motion to suppress evidence. In that motion, defendant sought to suppress "any and all statements made by the defendant during a custodial interrogation without benefit of his Miranda rights. . . ." (DE 22 at 2). The magistrate judge denied defendant's motion without prejudice to raising the issue again at trial, finding "the filing fails to provide adequate information for the court to assess the merits of this motion." (DE 24 at 2).

On October 10, 2017, the magistrate judge held a bench trial on all counts. The government presented evidence on all counts, including testimony of Specialist Austin R. Regeci ("Specialist Regeci") from the Military Police at Fort Bragg, and Officer Jason T. Kraft ("Officer Kraft") from the Provost Marshall's Office at Fort Bragg. The government also submitted several exhibits for trial which were admitted by the magistrate judge, including a satellite map of the area where the incident occurred, alcohol incident report, DHHS Form 4081, and Form 4082 print off. The defense

offered no evidence to the magistrate judge for admission and did not produce any witnesses.

During the testimony of Officer Kraft, defendant again raised his motion to suppress the evidence. (Tr. 21:16-22:2). Counsel objected by saying:

> At this point, I'd like to be heard on a motion to suppress. I recognize that that was previously filed and denied without prejudice under the 12(b)(3) motion. This is new information not available prior to trial, but I think at this point, we had -- I have some serious concerns regarding this interaction. Specifically, the removal of the defendant from a home and then subsequent statements made that I believe arguably would have been custodial interrogation at that point, and there hasn't been any testimony thus far that he was Mirandized or otherwise notified of his rights.

(Tr. 21:16-22:2). The magistrate judge overruled defendant's objection, directing him to raise the issue at the conclusion of trial and stating he would likely take the matter under advisement. (Tr. 22:5–15). In response, defense counsel said "I like that process, Your Honor. Thank you." (Tr. 22:16–17). When asked by the magistrate judge if defendant wished to present any evidence, counsel stated "[o]nly to reassert the motion to the extent that the Court takes this matter under advisement and request briefing of the Miranda issue." (Tr. 93:21-23) (emphasis added). The magistrate judge then took the matter under advisement and ordered briefing "regarding the Miranda issue that we've identified here today." (Tr. 104:2-14) (emphasis added).

After receiving briefs from the parties on the motion to suppress, the magistrate judge issued an order on May 31, 2018, denying the motion to suppress and reaching a verdict in defendant's case. (DE 30). The magistrate judge held that defendant waived any Fourth Amendment argument, and that defendant's Fifth Amendment Miranda rights were not violated because the officers never interrogated him. The magistrate judge then rendered a guilty verdict as to all counts.

On July 25, 2018, defendant appeared for sentencing. Defendant was sentenced to 12 months probation, 24 hours of community service, surrender of defendant's driver's licence, substance abuse assessment and treatment, a fine of $100 for each count, and special assessment of

$10 for each count. Judgement was entered July 26, 2018. This appeal followed.

B.	Statement of the Facts

The facts in the record pertinent to this appeal may be summarized as follows. On December 15, 2016, around 4:00 p.m., Officer Kraft was patrolling a residential area of the Fort Bragg Military Reservation. (Transcript of the Record ("Tr.") 6:21-24; 10:13–15; 11:4-15). While on patrol, Officer Kraft observed he observed two people, one of whom he later learned to be defendant, trying to dislodge a motorcycle from underneath a car parked in a parking lot. (Tr. 12:2–12). It appeared that the motorcycle had damaged the bumper of the car, and the front fork of the motorcycle had exploded. (Tr. 18:7–8; 26:6–8). Officer Kraft asked defendant and the other individual to stay where they were and walked to the house next to the parking lot to ask the homeowners if the damaged car belonged to them. (Tr. 12:13–19).

As Officer Kraft spoke to the homeowners, he "heard the motor on the motorcycle revving[,]" and when he turned around, the motorcycle, defendant, and the other individual had disappeared. (Tr. 12:17–22). Officer Kraft followed drips of leaking fluid from the motorcycle to the garage of a nearby home where someone had parked the motorcycle. (Tr. 18:6–9). Individuals in the garage eventually told him that the person Officer Kraft was looking for was in the house. (Tr. 18:16–20). Officer Kraft then spoke with the lessee of the residence and "gave him an ultimatum of either go get [the driver] or I'm going to charge [the lessee] with RDO[.]" (Tr. 20:17–19; 32:11–14; 32:25–33:3). The lessee complied. (Tr. 20:19).

When defendant "stagger[ed]" out of the house, Officer Kraft motioned him over and asked for his identification. (Tr. 21:7–10; 23:20). Officer Kraft recognized defendant as one of the two people he saw with the motorcycle at the scene of the accident because his knuckles were injured. (Tr. 20:22–25). Defendant's eyes were watery and glazed, and he had "a little bit of a dazed look"

4

on his face. (Tr. 21:7–8; 23:10–21). Officer Kraft also noticed that defendant's cheeks were flushed, but acknowledged that might have been because it was a "really cold" day. (Tr. 22:23–25; 23:21–22).

Defendant stepped off the home's front porch and into a pile of hot coals the group of individuals near the garage was using for grilling. (Tr. 21:2–5, 10–11). Officer Kraft told defendant to get out of the coals and again asked for his identification. (Tr. 21:11–12). Defendant then took his keys out and started walking across the street to his truck. (Tr. 21:12–14). Officer Kraft instructed defendant to stop and asked defendant a third time where his identification was, and defendant said it was in his truck. (Tr. 21:14–15). Officer Kraft noticed the smell of alcohol—specifically beer and spirits—on defendant's breath. (Tr. 23:23–24:4).

After identifying defendant, Officer Kraft attempted to conduct standard field sobriety tests ("SFST"), but was disrupted by onlookers, requiring him to call in Specialist Regeci to administer the SFSTs. (Tr. 22:25–23:9, 12–16). While waiting on Specialist Regeci, defendant was neither placed in handcuffs nor read his Miranda rights. (Tr. 24:5–7; 25:6–7). Specialist Regeci took "about twenty to thirty minutes" to get there. (Tr. 57:17–18). Upon speaking with defendant, Specialist Regeci noticed a "strong smell of alcohol" coming from Horton's person. (Tr. at 59:13–16).

For the next five to seven minutes, Specialist Regeci administered SFSTs to defendant, noticing that defendant behaved erratically in numerous ways during the administration of the various SFSTs. (See Tr. 59:18–19; 63:8–10; 64:3–7; 64:16–17; 65:11–66:5; 67:2–6; 69:17–18; 70:17–18, 20–21). Specialist Regeci testified that at some point during their interaction, without questioning, defendant "admitted to being on the motorcycle before the time of the collision, before the bike had taken off[,]" and stated that he was "only trying to move the motorcycle twenty-two

5

feet." (Tr. 71:17–19; 72:2–3). Based on defendant's performance on the SFSTs, Specialist Regeci believed defendant was impaired, so he placed him under arrest for DWI, and transported him to the Harnett County Detention Center. (Tr. 69:15–16; 72:4–7).

## COURT'S DISCUSSION

A.  Standard of Review

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. "An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005) (en banc) (citing Fed. R. Crim. P. 58(g)(2)(D)). "Findings of fact made by the trial court are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo." Id. at 306 (citing United States v. Leftenant, 341 F.3d 338, 342–43 (4th Cir.2003)).

B.  Analysis

Defendant raises three assignments of error: 1) the magistrate judge failed to address defendant's suppression motion before the close of trial and improperly ordered post-trial briefing on the issue, 2) the magistrate judge failed to address defendant's Fourth Amendment objection by considering it untimely, and 3) the magistrate judge failed to suppress statements made to law enforcement by defendant while in custody without the benefit of Miranda warnings. The court first addresses defendant's argument that he did not waive his Fourth Amendment challenge, then addresses the magistrate judge's decision to take the suppression motion under advisement, and

finally addresses defendant's Miranda claims.

        1.        Waiver of Defendant's Fourth Amendment Defense

Defendant asserts that he was unlawfully seized in violation of his Fourth Amendment rights at the time that he came out of the lessee's house to speak with Officer Kraft. In his post-trial briefing, he argues that any evidence resulting from this alleged seizure must be suppressed.

Motions to suppress evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling...." Fed. R. Crim. P. 12(d). "[F]ailure to file a suppression motion by the specified [] deadline operates as a waiver unless the court grants relief from the waiver '[f]or good cause.'" United States v. Moore, 769 F.3d 264, 267 (4th Cir. 2014). "Learning new information by the end of trial does not alone support a good cause finding for delay." Id. at 269.

Here, defendant failed to timely assert a Fourth Amendment claim. As an initial matter, defendant's pretrial motion does not invoke Fourth Amendment protection against unreasonable search and seizure,[1] but instead sought suppression of "any and all statements made by the defendant during a custodial interrogation without benefit of his Miranda rights. . . ." (DE 22 at 2). Since Miranda rights are derivative of the Fifth Amendment, United States v. Hashime, 734 F.3d 278, 282 (4th Cir. 2013), defendant failed to raise a Fourth Amendment objection before trial.

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

Defendant also failed to raise a motion to suppress under the Fourth Amendment during trial. As an initial matter, when defense counsel raised the motion at trial, he stated "I recognize that that was previously filed and denied without prejudice under the 12(b)(3) motion." (Tr. 21:17–19). This statement indicates that defendant intended to reraise the objection previously filed, namely a motion to suppress under the Fifth Amendment. Moreover, the basis for the motion as stated by defense counsel on the record is that "the removal of the defendant from a home and then subsequent statements made that I believe arguably would have been custodial interrogation at that point, and there hasn't been any testimony thus far that he was Mirandized or otherwise notified of his rights." (Tr. 21:22-22:2). This objection articulates a basis for suppression under the Fifth Amendment, but not invoke defendant's Fourth Amendment rights.

Further evidence in the record also shows that both defense counsel and the magistrate judge understood defendant's objection to be under the Fifth Amendment and not the Fourth Amendment. When asked if the defense intended to present any evidence, counsel stated "[o]nly to reassert the motion to the extent that the Court takes this matter under advisement and <u>request briefing of the Miranda issue</u>." (Tr. 93:21–23) (emphasis added). This statement following the denial of defendant's motion to dismiss reiterates the basis for defendant's motion to suppress was the Fifth Amendment, not the Fourth Amendment. Finally, before taking the case under advisement, the magistrate judge stated "the defense will have seven days to file a motion in brief <u>regarding the Miranda issue that we've identified here today</u>." (Tr. 104:5–7) (emphasis added). Neither defendant nor defense counsel said anything to explain to the magistrate judge at this point that he also intended to raise a motion to suppress under the Fourth Amendment.

None of the facts on the record disclose that defendant raised his Fourth Amendment claim until after trial. However, as stated above, the magistrate judge did not give defendant leave to file

8

a motion to suppress on Fourth Amendment grounds, but only on "the Miranda issue that we've identified here today." (Tr. 104:5–7). Moreover, defendant did not have good cause to delay his motion to suppress under the Fourth Amendment by not filing it in his pre-trial motion because "[l]earning new information by the end of trial does not alone support a good cause finding for delay." Moore, 769 F.3d at 269.

Defendant first argues that he did not "waive" his Fourth Amendment rights by failing to make a motion. This argument is unpersuasive because it is not the law of the Fourth Circuit. Defendants waive their rights by failing to timely raise a motion to suppress. See Moore, 769 F.3d at 267. Defendant next tries to argue that defendant "reserved the right to move for further suppression of evidence" in his pretrial suppression motion (DE 41 at 13). This statement fails to raise any Fourth Amendment motion at all, and in any event the magistrate judge correctly stated in his order denying defendant's pretrial motion, defendant was still obligated to raise motions "in a manner consistent with Rule 12 of the Federal Rules of Criminal Procedure." (DE 24 at 3).

Defendant also argues that there is an "implicit understanding" that the Fourth and Fifth Amendments were raised together in his objection because of the relatedness of the two rights. (DE 41 at 14). Defendant specifically points to his statement about "removal from the home" as sufficient to raise a Fourth Amendment challenge. (Id.).

The court disagrees with defendant's argument. The Fourth Amendment and Fifth Amendment, while related, implicate different legal analyses. See, e.g., Berkemer v. McCarty, 468 U.S. 420, 435–42 (1984) (holding "custody" for purposes of Miranda and "seizure" under the Fourth Amendment to be different for purposes of a traffic stop). Moreover, while defendant mentions "removal of the defendant from a home," (Tr. 21:22–23), defendant's motion clearly invokes the Fifth Amendment and not the Fourth Amendment. Defendant stated that he was re-raising his

9

pretrial motion to suppress, and that removal from the home "would have been custodial interrogation at that point." (Tr. 21:16–25). This motion invokes the protections of the Fifth Amendment, not the Fourth Amendment.

For the reasons stated above, the court affirms the magistrate judge's ruling that defendant waived his Fourth Amendment rights by not timely raising them.

2. Post-Trial Briefing of Defendant's Fifth Amendment Motion to Suppress

Defendant argues that the magistrate judge committed error by taking a suppression motion under advisement at the conclusion of a bench trial, and resolving it in the same order as the verdict.

Motions to suppress evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). "The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing. If the court does not set one, the deadline is the start of trial." Fed. R. Crim. P. 12(c)(1). "At any time before trial, the court may extend or reset the deadline for pretrial motions." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling. . . ." Fed. R. Crim. P. 12(d).

"A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). "Rule 52(b) authorizes an appeals court to correct a forfeited error only if (1) there is 'an error,' (2) the error is 'plain,' and (3) the error 'affect[s] substantial rights.'" Henderson v. United States, 568 U.S. 266, 272 (2013) (quoting United States v. Olano, 507 U.S. 725, 732–33 (1993)). Additionally, "the standard that should guide

the exercise of remedial discretion under Rule 52(b) is whether the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Henderson, 568 U.S. at 272; see also United States v. Carthorne, 726 F.3d 503, 510 (4th Cir. 2013).

Here, defendant failed to object to the magistrate judge's decision to deny the motion to suppress in this case and instead require post trial briefing on the motion. (See Tr. 22:5–17; 93:19–24). Therefore, the court must determine if the magistrate judge committed plain error in failing to conduct a suppression hearing before conducting the remainder of trial, taking the matter under advisement, and requiring post trial briefing on the motion.

The court concludes that the magistrate judge erred by failing to make a finding that good cause existed to delay consideration of defendant's suppression motion until after trial. See Fed. R. Crim. P. 12(c)(3), (d). The magistrate judge denied defendant's request to voir dire the witness because he intended "to take this matter under advisement" and "[s]o just to kind of streamline things." (Tr. 22:3–11). The Federal Rules of Criminal Procedure demonstrate a strong preference for resolving motions to suppress at the earliest possible opportunity. See Fed. R. Crim. P. 12(c)(3), (d); Moore, 769 F.3d at 267–68 (observing suppression motions "put[] the fact finder—jury or judge—on unwanted hold until the suppression hearing is held"). The magistrate judge's entertaining an additional suppression motion at trial and then subsequently refusing to conduct a suppression hearing, conducting the remainder of the trial, and rendering a verdict at the same time as the order denying suppression "[s]o just to kind of streamline things" with no further explanation is not a delay supported by good cause. Therefore, the magistrate judge erred by failing to conduct the suppression hearing before proceeding further with trial. (Tr. 22:5–15).

However, for the reasons stated below, the court does not find this plain error reversible because, in this case, the record shows defendants substantial rights were not affected. See Olano,

11

507 U.S. at 734 (explaining that a plain error "must have been prejudicial: It must have affected the outcome of the district court proceedings"). Specifically, the record does not disclose any violation of defendant's Fifth Amendment rights.

3. Defendant's Fifth Amendment Defense

Defendant argues that his Fifth Amendment rights were violated because he was subjected to custodial interrogation without being read his Miranda rights.

"No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "As a prophylactic safeguard for this constitutional guarantee, the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation." Hashime, 734 F.3d at 282 (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). A defendant is in "custody" for purposes of the Fifth Amendment when, "under the totality of the circumstances, a suspect's freedom of action is curtailed to a degree associated with formal arrest." United States v. Hargrove, 625 F.3d 170, 178 (4th Cir. 2010) (citing Berkemer, 468 U.S. at 440). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

"Ordinarily, the request for identifying information, however phrased, is inherently ministerial and does not violate Miranda." United States v. Taylor, 799 F.2d 126, 128 (4th Cir. 1986). Additionally, "confessions given freely and without compelling state influences are admissible and indeed, desirable." United States v. Kimbrough, 477 F.3d 144, 149–50 (4th Cir. 2007) (citing Arizona v. Mauro, 481 U.S. 520, 529 (1987)).

Sharing the magistrate judge's concern with the government's position that defendant was

not in custody, the court assumes without deciding that defendant was in custody for purposes of Miranda. (See Tr. 89:10–17). Upon review of the record, the court concludes that defendant was not interrogated by either Officer Kraft or Specialist Regeci. The record discloses that Officer Kraft asked defendant for his identification several times. (Tr. 21:8–15). However, asking for identification is not "interrogation" within the meaning of Miranda, thus not requiring defendant to be read his Miranda rights. Taylor, 799 F.2d at 128.

The only other evidence presented in the record of statements made by the defendant are his statements to Specialist Regeci where, at some point during their interaction, without questioning, defendant "admitted to being on the motorcycle before the time of the collision, before the bike had taken off[,]" and stated that he was "only trying to move the motorcycle twenty-two feet." (Tr. 71:17–19; 72:2–3). These statements are also not the product of "interrogation" within the meaning of Miranda. Here, the record shows that Specialist Regeci did not ask defendant any questions at all, and he did not make statements that were reasonably likely to elicit an incriminating response from defendant. (Tr. 71:14–19; 72:1–3, 17–19); see Innis, 446 U.S. at 301. Therefore, defendant voluntarily made the statements to Specialist Regeci, and was not subject of a custodial interrogation triggering the protections of Miranda.

Defendant argues that the "involuntary nature of his prolonged detention" made his statements involuntary. (DE 41 at 17–18). The court rejects this contention. A suspect can be in custody and still make a voluntary statement. See Innis, 446 U.S. at 294. Indeed, in Innis, the defendant in that case was already under arrest and in the back of the patrol car when he made statements the court found voluntary. Id. at 294–95. Therefore, defendant's statements are still voluntary even though he was subjected to SFSTs by Specialist Regeci.

The court affirms the holding of the magistrate judge that defendant's Fifth Amendment

Miranda rights were not violated.

## CONCLUSION

Based on the foregoing, the judgment of the district court, entered upon the sentencing determination of the magistrate judge, is AFFIRMED.

SO ORDERED, this the 29th day of November, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge